# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

EMMANUEL L. TYLER,

   *Plaintiff*,

vs.

MICHAEL J. ASTRUE, Commissioner of Social Security,

   *Defendant.*

Case No. 10-2326-EFM

## MEMORANDUM AND ORDER

  Plaintiff Emmanuel L. Tyler received supplemental security income benefits based on a disability as a child. Upon reaching 18, the law requires that an individual's eligibility for benefits be redetermined. After review, the Commissioner of Social Security ("Commissioner") denied Plaintiff's application for continuing supplemental security income benefits. Plaintiff seeks review of this decision. Having reviewed the record, and as described below, the Court affirms the order of the Commissioner.

### I. Legal Standard

  Pursuant to 42 U.S.C. § 405(g), "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." Upon review, the Court must determine whether substantial evidence supports the factual findings and whether the administrative law judge ("ALJ") applied the correct legal standard.[1] "Substantial evidence is such

---

[1] *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance."[2] The Court is not to reweigh the evidence or substitute its opinion for the ALJ.[3] However, the Court must examine the record as a whole, including whatever in the record detracts from the ALJ's findings, to determine if the ALJ's decision is supported by substantial evidence.[4] Evidence is not substantial if it is overwhelmed by other evidence or if it is a mere conclusion.[5]

To establish a disability, a claimant must demonstrate a physical or mental impairment that has lasted or can be expected to last for a continuous period of twelve months and an inability to engage in any substantial gainful work existing in the national economy due to the impairment.[6]

The Commissioner uses a five-step sequential process to evaluate whether a claimant is disabled.[7] The claimant bears the burden during the first four steps.[8] In steps one and two, the claimant must demonstrate that he is not presently engaged in substantial gainful activity and he has a medically severe impairment or combination of impairments.[9] "At step three, if a claimant can show that the impairment is equivalent to a listed impairment, he is presumed to be disabled and

---

[2] *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (quotations and citations omitted).

[3] *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (citations omitted).

[4] *Wall,* 561 F.3d at 1052 (citing *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007)).

[5] *Id.* (citing *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005)); *see also Gossett v. Bowen*, 862 F.2d 802, 805 (10th Cir. 1988) (citation omitted).

[6] 42 U.S.C. § 1382c(3)(A)); *see also* 42 U.S.C. § 423(d)(1)(A).

[7] *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010); 20 C.F.R. § 404.1520(a).

[8] *Lax*, 489 F.3d at 1084.

[9] *Id.* (citations omitted).

entitled to benefits."[10] If, however, a claimant does not establish an impairment at step three, the process continues. The Commissioner assesses a claimant's residual functioning capacity (RFC), and at step four, the claimant must demonstrate that his impairment prevents him from performing his past work.[11] The Commissioner has the burden at the fifth step to demonstrate that work exists in the national economy within the claimant's RFC.[12] The RFC assessment is used to evaluate the claim at both step four and step five.[13]

## II. Factual and Procedural Background

On September 23, 1993, Plaintiff Emmanuel L. Tyler, age five, was awarded children's supplemental social security income benefits. Plaintiff was ultimately awarded benefits due to mental retardation. His case was reviewed in 1997 and 2003, and both times, his benefits continued. Upon reaching the age of 18, Plaintiff's case was again reviewed, and he was found to be no longer disabled as of December 2006.[14] Plaintiff appealed the decision and requested a hearing before an administrative law judge (ALJ). On January 23, 2008, after a hearing at which Plaintiff, his mother, and a vocational expert testified, the ALJ issued her decision finding that Plaintiff was not eligible for benefits.

The evidence before the ALJ, at the time Plaintiff's eligibility for benefits was redetermined, is summarized as follows. Consultive psychological examiner, Marc Schlosberg, Ph.D., provided

---

[10]*Id.*

[11]*Id.*; *see also* 20 C.F.R. § 416.920(a)(4)(iv).

[12]*Lax*, 489 F.3d at 1084; 20 C.F.R. § 416.920(a)(4)(v).

[13]*See* 20 C.F.R. § 404.1520(a)(4)(iv)-(v).

[14]Upon reaching 18 years of age, the law requires disability benefits to be redetermined. *See* 20 C.F.R. § 416.987.

a medical opinion. In November 2006, when Plaintiff was 18 years old, Dr. Schlosberg administered a psychometric test instrument intended to measure intellectual functioning in adults, and he provided a formal diagnostic assessment of borderline intellectual functioning based upon Plaintiff's attainment of valid scores of verbal IQ 70, performance IQ 73, and full scale IQ 69.[15] Dr. Schlosberg's formal diagnostic impression was borderline intellectual functioning, not mental retardation.

In addition, detailed assessments and medical opinions were provided by Drs. Schulman and Cohen, state agency psychologists. Both doctors are licensed psychologists, and are well-qualified mental healthcare specialists with specific expertise regarding the evaluation of mental impairments under Section 12.00 of the Listing of Impairments. Their assessments were indicative of borderline intellectual functioning, consistent with the formal diagnostic impression provided by Dr. Schlosberg. Drs. Schulman and Cohen found that Plaintiff did not meet the requirement of Section 12.05D but that Plaintiff had the following functional limitations: mild restriction of activities in daily living; mild difficulties in maintaining social functioning; and moderate difficulties in maintaining concentration, persistence, or pace.

Plaintiff graduated from high school, with help from special education services, and he earned primarily grades of A's and B's. In addition, Plaintiff worked at the school cafeteria as part of a work-study program during his last year of high school. Plaintiff worked in this capacity for the entire school year and performed well in those job duties.

In November 2006, Plaintiff admitted to a consultative psychological examiner that he had no difficulty performing a wide variety of activities of daily living, such as providing for his own

---

[15]Plaintiff's previous scores had once been in the 70's and twice been in the 50's.

personal care and hygiene, washing dishes, vacuuming, dusting, watching television, and looking for work two hours a day.

In a disability questionnaire filed shortly prior to the hearing, Plaintiff admitted the ability to perform a wide range of activities in daily living, such as regularly leaving home without assistance, helping his grandfather perform farm-related chores, watching television, playing video games, going to movie theaters at least once per month, and attending church meetings or groups several times per week.

At the administrative hearing, Plaintiff and Plaintiff's mother testified as to Plaintiff's limitations. Plaintiff's and Plaintiff's mother's testimony limited Plaintiff's abilities significantly more than the other records before the ALJ. Plaintiff testified that he needed someone to help him read and understand words, did not know how to write, did not leave the house alone, had no friends, and his mom had to remind him to take a bath or shower and to brush his teeth. Plaintiff's mother testified that Plaintiff needed a lot of direction and that she did not think Plaintiff could live alone because she had to remind him of too many things. A vocational expert also testified, noting that a hypothetical claimant with the same restrictions as Plaintiff has the capacity to perform several unskilled occupations in the economy.

Although step one generally requires a determination as to whether the claimant is presently engaged in substantial gainful activity, the ALJ noted that this step was unnecessary when redetermining disability upon an individual's attainment of age 18. At step two, the ALJ determined that Plaintiff had borderline intellectual functioning, and his impairment was severe within the meaning of the regulations.

At step three, the ALJ found that Plaintiff's impairment, or combination of impairments, did not meet or medically equal one of the listed impairments. After establishing Plaintiff's RFC, the ALJ found that claimant had no past relevant work. At step five, the ALJ determined that Plaintiff had the capacity to perform work in potentially seven different types of jobs existing in significant numbers in the national economy. As such, the ALJ concluded that Plaintiff was not disabled under the Social Security Act.

Plaintiff requested review of the ALJ's decision by the Appeals Council which denied his request on May 14, 2010. The decision of the ALJ, therefore, stands as the final decision of the Commissioner. Having exhausted his administrative remedies, Plaintiff seeks relief from this Court.

### III. Analysis

Plaintiff claims the ALJ erred (1) in failing to find that Plaintiff's impairments met the requirements of Listing 12.05(D); and (2) because her decision did not rest on substantial evidence because the RFC and hypothetical did not accurately capture Plaintiff's limitations.

**1. Whether Plaintiff's impairments meet the requirements of Listing 12.05(D)**

The ALJ found that Plaintiff did not have an impairment, or combination of impairments, that met or medically equaled one of the listed impairments. Specifically, the ALJ determined that Plaintiff's mental impairment did not meet or medically equal the specific severity requirements of sections 12.02 or 12.05 of the Listing of Impairments. Plaintiff argues that the ALJ erred at step three in finding that his impairment did not meet the listed impairment of section 12.05(D) because he was found to be mildly mentally retarded prior to age twenty-two; he has a valid IQ score between 60 and 70; and he has marked impairment in the activities of daily living and concentration,

persistence, or pace.[16]

> Listing 12.05(D), the listing for mental retardation, provides:
>
> Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> . . .
>
> D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:
>
> 1. Marked restriction of activities of daily living; or
>
> 2. Marked difficulties in maintaining social functioning; or
>
> 3. Marked difficulties in maintaining concentration, persistence, or pace; or
>
> 4. Repeated episodes of decompensation, each of extended duration.

Substantial evidence supports the ALJ's finding that Plaintiff does not meet the requirements of Listing 12.05(D). In finding that Plaintiff's impairment did not meet section 12.05(D), the ALJ gave significant weight to the opinion from Dr. Mark Schlosberg, a consultative psychological examiner, but she gave greater weight to the detailed assessments provided by Drs. Schulman and Cohen.[17] All three doctors mutually opined that the evidence as a whole was indicative of borderline intellectual functioning, rather than mental retardation.

Plaintiff argues that his mental retardation manifested itself prior to age 22, and the ALJ erred in not so finding. Although the ALJ noted that the evidence did not objectively establish

---

[16]Plaintiff only addresses section 12.05(D).

[17]None of the physicians were treating physicians.

mental retardation as an impairment under the adult standards of the regulations, she still gave Plaintiff the benefit of additional consideration of his subaverage intellectual functioning under the severity requirements of Section 12.05. As such, even though the ALJ determined that the evidence did not support a mental retardation impairment, it appears that the ALJ still found that Plaintiff met the first requirement under Listing 12.05 of having significantly subaverage general intellectual functioning.

The ALJ went on to address Plaintiff's capacity for activities in daily living, and Plaintiff also challenges the ALJ's finding by arguing that he demonstrated a marked limitation in activities of daily living. As noted above, the ALJ afforded significant weight to Drs. Schulman and Cohen. Their assessments found that Plaintiff's limitations only included a mild restriction of daily living. The ALJ addressed Plaintiff's daily living activities, noting that Plaintiff graduated from high school, although with some special education services and course work, with grades of primarily A's and B's. She noted that the evidence as a whole demonstrated a very wide range of activities in daily living. Significant evidence supports her finding, as the activities that the ALJ noted include Plaintiff regularly leaving home without assistance; helping his grandfather perform farm-related chores at his grandfather's home without needing supervision; participating in recreation and leisure activities; leaving home to search for a job two hours a day before returning home; riding a bus to school and his work study job without being accompanied by family; and performing a wide variety of household chores, including washing dishes, vacuuming, dusting, performing yard work, and doing laundry.[18] As such, the Court finds that there is significant evidence in the record to support

---

[18]Plaintiff primarily relies on his testimony (and his mother's) given at the administrative hearing with respect to his inability to perform daily activities. However, the ALJ noted that she found Plaintiff's and Plaintiff's mother's testimony lacking in credibility because their testimony was refuted by or inconsistent with multiple admissions and other evidence of record. Plaintiff does not challenge the ALJ's credibility determination.

the ALJ's finding that Plaintiff's daily activities were not markedly limited and that Plaintiff did not meet the 12.05(D) listing for mental retardation.[19]

## 2. Whether substantial evidence exists to support the ALJ's RFC

Plaintiff contends that the ALJ's decision does not rest on substantial evidence because the ALJ's RFC does not accurately capture Plaintiff's limitations and the hypothetical does not accurately capture Plaintiff's limitations. In determining Plaintiff's RFC, the ALJ found that Plaintiff could perform a full range of work at all exertional levels but with the following non-exertional limitations due to Plaintiff's borderline intellectual functioning: Plaintiff could never be expected to understand, remember, or carry out detailed instructions; Plaintiff was capable of understanding, remembering, and carrying out simple instructions, but his job tasks must be routine and repetitive with very little variation and must not involve exposure to environmental hazards.

According to SSR 96-8p, the RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and non-medical evidence."[20] In assessing a claimant's RFC, the ALJ must consider all of the relevant evidence in the record, which may include the claimant's medical history, reports of daily activities, lay evidence, recorded observations, medical source statements, evidence from attempts to work, and work evaluations.[21]

---

[19]Under section 12.05(D), a claimant must meet at least two criteria. Plaintiff only argues that the ALJ erred with respect to 12.05(D)(1) and (3). Because the Court finds that there is substantial evidence to support the ALJ's finding that there was not a marked restriction of Plaintiff's daily activities (12.05(D)(1)), the Court finds it unnecessary to address Plaintiff's contention that the ALJ erred in not finding that he had marked restrictions in his concentration, persistence, or pace (12.05(D)(3)).

[20]SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996); *see also Lawton v. Barnhart*, 121 F. App'x 364, 374 (10th Cir. 2005).

[21]SSR 96-8p, 1996 WL 374184, at *5.

Here, the ALJ engaged in a meaningful RFC analysis and cited specific evidence supporting her RFC finding. Plaintiff asserts that the evidence shows that he was only able to graduate from high school and work two hours a day because he was given accommodations, such as a job coach and paraprofessional. However, the ALJ also had this evidence before her, and it is not this Court's job to reweigh the evidence or substitute its opinion for the ALJ.

In addition, Plaintiff argues that Dr. Schlosberg opined that Plaintiff's capacity for concentration would likely be inadequate for focusing on simple tasks over a normal eight hour day. However, the ALJ's assessment differed from Dr. Schlosberg as she noted that Dr. Schlosberg's assessment appeared to be inconsistent with Plaintiff's performance and his demonstrated ability to earn A's and B's in most of his classes and inconsistent with Dr. Schulman's and Dr. Cohen's opinion that Plaintiff was capable of performing basic work-related activities.[22] As noted above, other evidence must overwhelm the evidence the ALJ relied upon in order for this Court to find that there was not substantial evidence to support the ALJ's findings. That is not the case here. As such, the totality of the evidence supports the ALJ's RFC determination and the hypothetical given to the vocational expert.

---

[22]It appears that Drs. Schulman and Cohen both misquoted one sentence of Dr. Schlosberg's report in which he opined that Plaintiff did not have the capacity for simple activity over an eight hour day. In both Dr. Schulman's and Dr. Cohen's assessments, they indicate that Plaintiff had the capacity for simple activities over an eight hour day. However, as noted above, the ALJ noted Dr. Schlosberg's assessment that Plaintiff did not have the capacity for simple activity and relied upon evidence in the record as to why she disagreed with it.

**IT IS ACCORDINGLY ORDERED** that the judgment of the Commissioner is **AFFIRMED**.

**IT IS SO ORDERED**.

Dated this 14th day of June, 2011.

                                          ERIC F. MELGREN
                                          UNITED STATES DISTRICT JUDGE